IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-03268-PAB-NRN

FIDEL A. PENA-GIL,

    Petitioner,

v.

TODD M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement,
ROBERT HAGAN,[1] Field Director of the Denver Field Office, and
WARDEN, Aurora Contract Detention Facility,

    Respondents.

---

# ORDER

---

This matter comes before the Court on petitioner Fidel A. Pena-Gil's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Respondents filed a response. Docket No. 14. Petitioner filed a reply. Docket No. 16.[2]

## I. BACKGROUND[3]

Petitioner is a native and citizen of Cuba. Docket No. 1 at 8, ¶ 30. Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. *Id*. at 2, ¶ 9. In May 1980, petitioner was permitted to enter and temporarily remain in the United States as part of the Mariel Boatlift. *Id.* at 8, ¶ 30. On December 15, 1986,

---

    [1] Pursuant to Federal Rule of Civil Procedure 25(d), Robert Hagan is automatically substituted as a party in this action.
    [2] Neither party requested a hearing to consider petitioner's petition.
    [3] The Court refers to the allegations in the petition for writ of habeas corpus for the purpose of providing background. Respondents do no contest plaintiffs' allegations.

petitioner was convicted of providing false statements in the acquisition of a firearm in the United States District Court for the District of Arizona.  Docket No. 1 at 8, ¶ 31; Docket No. 1-4 at 1.  In December 1987, an immigration judge placed petitioner in exclusion proceedings because he did not possess a valid visa or entry document.  Docket No. 1 at 8, ¶ 31.  Petitioner was released from criminal custody in 1988.  *Id.*, ¶ 32.

After petitioner's release from criminal custody, the Immigration and Naturalization Service ("INS") took petitioner into immigration custody.  *Id.*  In January 1989, an immigration judge ordered petitioner excluded from admission and subject to deportation.  *Id.*, ¶ 33.  The INS Commissioner denied petitioner's request for parole from immigration custody based on petitioner's criminal history.  *Id.*, ¶ 34.  The INS was unable to deport petitioner to Cuba or to a third country; petitioner was released from immigration custody after approximately two years.  *Id.*, ¶ 35.  Between petitioner's release in 1990 and June 2025, petitioner complied with all government directives to report regarding his immigration status.  *Id.*, ¶ 36.

In June 2025, petitioner was placed into immigration custody by the Department of Homeland Security ("DHS").  *Id.*, ¶ 38.  DHS gave petitioner a "warning to Alien Ordered Removed or Deported," which stated that petitioner had been ordered removed from the United States under Section 240 of the Immigration and Nationality Act ("INA").  *Id.* at 9, ¶ 39.

Since he was taken into immigration custody, Immigration and Customs Enforcement ("ICE") officers have attempted to persuade petitioner to voluntarily go to Mexico.  *Id.*, ¶¶ 40, 42.  ICE has transferred petitioner to several locations during its

2

efforts to convince petitioner to voluntarily go to Mexico, but each time returned petitioner to the Denver Contract Detention Facility. *Id.*, ¶ 42.

On October 16, 2025, petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2441. *See* Docket No. 1. Petitioner brings a claim for violation of 8 C.F.R. § 212.12 (Count One); a substantive due process claim (Count Two); a claim for violation of the INA (Count Three); a procedural due process claim (Count Four); and a claim for violation of the INA regarding third country removal (Count Five). *See id.* at 10-16.

## II. ANALYSIS

### 1. Counts Two and Three: *Zadvydas* Claims

In Counts Two and Three, petitioner alleges that respondents violated his substantive due process rights and the INA, citing *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* Docket No. 1 at 11-13.

The parties disagree on the statutory scheme that governs petitioner's detention and potential deportation. Petitioner contends that, because he was "ordered excluded prior to the 1996 Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), his potential deportation is governed by the prior statutes, including 8 U.S.C. § 1182(a)(9)(20) . . . [and] § 1227 (1998)." *See id.* at 4, ¶ 15; Docket No. 16 at 6-7. Petitioner argues that, because he was ordered excluded before the enactment of IIRIRA, he is "not subject to mandatory detention" that is described in 8 U.S.C. § 1231(a)(1)(a) and, therefore, the "Court must evaluate whether his continued detention has become unconstitutional." *See* Docket No. 16 at 7. Respondents contend that petitioner is "currently detained under 8 U.S.C. § 1231." *See* Docket No.

3

14 at 10.  However, both parties rely on *Zadvydas* as being instructive in whether petitioner's detention is unconstitutional.  See Docket No. 14 at 10-12; Docket No. 16 at 7-9.

In *Zadvydas*, the Supreme Court held that a noncitizen ordered removed and detained under § 1231(a)(6) cannot be indefinitely detained without violating the Fifth Amendment of the United States Constitution.  *See* 533 U.S. at 701.  *Zadvydas* held that a six-month period of post-removal detention is presumptively reasonable, but "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  In *Clark v. Martinez*, 543 U.S. 371, 377-78 (2005), the Supreme Court held that *Zadvydas*'s holding is applicable to noncitizens ordered removed and detained pursuant to § 1182.  One of the petitioners in *Clark*, like petitioner in this case, was ordered excludable and ordered to be deported under § 1182 prior to the enactment of IIRIRA.  *See id*. at 375.  Because the petitioner in *Clark* was "detained well beyond six months after [his] removal order[] became final," and because it was determined that removal to Cuba was not reasonably foreseeable, *Clark* held that the petitioner's habeas petition should have been granted.  *See id*. at 386-87.  In sum, regardless of whether petitioner's detention is controlled by pre-IIRIRA or post-IIRIRA statutes, *Zadvydas* controls the constitutionality of petitioner's detention.

Concerning the length of petitioner's detention, respondents argue that the "six-month presumptively reasonable period has not yet expired" because petitioner was taken into custody on June 12, 2025.  Docket No. 14 at 11; *see also* Docket No. 1-5;

4

Docket No. 14-1 at 2-3, ¶ 11.  After an immigration judge ordered petitioner excludable and subject to deportation on January 10, 1989, petitioner was in immigration custody for approximately 20 months until September 28, 1990.  Docket No. 1 at 8, ¶¶ 33-35; Docket No. 1-3; Docket No. 14-1 at 2-3, ¶¶ 8-10.  Despite petitioner's 20-month and five-month periods of detention being served nonconsecutively, petitioner has nonetheless been detained longer than the six-month presumptively reasonable period.  *See Siguenza v. Moniz,* 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.") (collecting cases); *Nguyen v. Scott*, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (rejecting the government's argument that, "because [petitioner's] detention was not consecutive, the clock has restarted" and concluding that "Petitioner's detention is not presumptively reasonable" pursuant to *Zadvydas*); *Bailey v. Lynch*, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("Government first argues that it may continue to detain Petitioner because, at the time of his filing of the instant petition, he had not yet been held for the presumptively reasonable six-month period . . . .  This argument, however, ignores . . . that the removal period does not restart simply because an alien who has previously been released is taken back into custody."); *Tang v. Bondi*, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025) ("A petitioner's total length of confinement need not be consecutive to reach the six-month presumptively reasonable limit established in *Zadvydas*.").  Therefore, the Court finds that the presumptively reasonable period for petitioner's detention has been exceeded.

5

The Court turns to whether petitioner has met his burden under *Zadvydas*. Respondents argue that, even if the 6-month presumptively reasonable period has been exceeded, petitioner fails to provide a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See* Docket No. 14 at 11. Petitioner contends that the "government spent two years seeking to deport him, during which time he was detained, and has since been unable to deport him." Docket No. 1 at 11, ¶ 57. Petitioner notes that "ICE twice tried to deport him to Mexico, to no avail" and "historically, Cuba will not accept the return of Mariel Cubans." Docket No. 16 at 8-9.

The Court finds that petitioner has met his burden to show that there is good reason to believe that there is no significant likelihood of his removal to a third country or to Cuba in the reasonably foreseeable future. In petitioner's declaration, attached to his motion for a preliminary injunction, he states that, upon being detained, an ICE officer informed him that petitioner would be deported to Spain because he had a "previous deportation order." Docket No. 8-1 at 1. Petitioner was then transported to Krome North Service Processing Center in Miami, Florida, where an ICE officer asked if petitioner wanted to go to Mexico. *See id*. at 2. Petitioner was not "given any documents to explain [his] detention or possible deportation to Mexico or Spain." *See id*. After approximately one month, petitioner was taken to El Paso Service Processing Center in El Paso, Texas, and then to South Texas ICE Processing Center in McAllen, Texas, before being transferred back to the Denver Contract Detention Facility. *See id.* at 2-3. At the Denver Contract Detention, the warden asked petitioner if he wanted to be deported to Mexico. *See id.* at 3. Petitioner told the warden that he did not want to go to Mexico and asked what would happen with his case. *See id.* In petitioner's

6

declaration, he states that the warden "told me that my case was complicated because I am Cuban, so I was going to be detained for six months and then let go." *Id.* Petitioner was then transferred to Florence Service Processing Center in Florence, Arizona and back to the Denver Contract Detention Facility, where ICE officers again asked whether petitioner wanted to be deported to Mexico. *See id*. The government does not contest the allegations in petitioner's declaration. In the declaration of ICE Deportation Officer Rosa Escareno, she confirms that ICE transferred petitioner to El Paso, Texas and Florence, Arizona for anticipated deportation to Mexico, which deportations were cancelled. Docket No. 14-1 at 3, ¶¶ 13-14.

As evidenced by the respondents' course of conduct during petitioner's detention, respondents identified several countries for deportation, yet they have produced no documentation regarding petitioner's deportation to a third country and were twice unsuccessful in deporting petitioner to Mexico. Moreover, it appears that respondents concede petitioner's removal to a third country is unlikely. Instead, respondents argue that they will be able to deport petitioner to Cuba. *See* Docket No. 14 at 11. However, petitioner has shown that his removal to Cuba is also unlikely given that the government has been unable to deport petitioner for over 30 years, and the government has not provided any reason as to why deportation to Cuba is now possible. *See* Docket No. 1 at 8, ¶¶ 32-35. Accordingly, petitioner has met his burden. *See Momennia v. Bondi*, 2025 WL 3006045, at *1 (W.D. Okla. Oct. 27, 2025) ("based upon the information obtained in both Petitioner's prior attempted removal and the current attempted removal, Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); *Nguyen*, 2025

7

WL 2419288, at *14-15 (finding that the petitioner met his burden where "conversations with the ICE officer did not suggest that any changed circumstances in Petitioner's individual case made his deportation likely," the petitioner "offered evidence that the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted," and there was "good reason to believe that there is no significant likelihood Vietnam will accept Petitioner in the reasonably foreseeable future, after it has refused to do so for more than twenty years") (internal quotations and citation omitted); *Siguenza*, 2025 WL 2734704, at *3 (finding that the petitioner met his burden where he showed that "Petitioner cannot be removed to Ecuador, and Respondents, in the more than six months since Petitioner's re-detention, have not been able to even identify a third country that might be willing to accept him, let alone secure travel documents for Petitioner" and the government "provided no evidence regarding any changed circumstances that made Petitioner's removal significantly likely and no evidence about removals of similarly situated noncitizens").

Turning to respondents' burden under *Zadvydas*, respondents argue that they have presented evidence sufficient to rebut petitioner's showing. *See* Docket No. 14 at 12. Respondents point to ICE Officer Escareno's declaration,[4] which they contend shows "ICE is actively pursuing Petitioner's deportation to Cuba through the Cuban government." *Id.* ICE Officer Escareno, however, merely states that "ICE continues to pursue Petitioner's deportation by nominating him for deportation to Cuba and has pursued that process through the Cuban government. The process is still pending

---

[4] ICE Officer Escareno's declaration, purportedly made under 28 U.S.C. § 1746, is deficient because it is not made under penalty of perjury.

adjudication." Docket No. 14-1 at 3, ¶ 15. ICE Officer Escareno does not indicate whether Cuba has acknowledged the request for petitioner's deportation or describe the steps the government has taken to effect petitioner's deportation to Cuba. Unsubstantiated assertions that the government will pursue removal are insufficient to satisfy its burden. *See Siguenza,* 2025 WL 2734704, at *3 (finding that the government failed to meet its burden where the government merely asserted that "they were in the process of working" with potential countries for removal and "that there was a chance that Petitioner would be removed to one of these countries, but that they could not provide a specific timeframe for his removal," with the court noting that a "chance of removal within an unspecified period of time is not the same as a significant likelihood of removal in the reasonably foreseeable future") (internal quotations omitted); *Vaskanyan v. Janecka,* 2025 WL 3050075, at *3 (C.D. Cal. Sept. 10, 2025) ("That the government was 'pursuing the possibility of removing Petitioner to Armenia' did not show that Petitioner's removal was likely in the reasonably foreseeable future. In fact, that position – that a showing of continued good faith efforts to effectuate deportation is sufficient to prolong detention – was squarely rejected by the Supreme Court in *Zadvydas* as 'demand[ing] more than our reading of the [INA] can bear.'") (quoting *Zadvydas,* 533 U.S. at 702) (internal citation omitted); *Ahmed v. Freden*, 744 F. Supp. 3d 259, 267 (W.D.N.Y. 2024) ("DHS's active efforts to obtain travel documents from Pakistan are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued."). Furthermore, respondents' failure to explain why deportation is now possible, when previous

9

deportation efforts have failed, supports the Court's finding that respondents have failed to meet their burden. *See Nguyen*, 2025 WL 2419288, at *14, *18 (finding that respondents failed to meet their burden where they have "not provided any evidence of Vietnam's eligibility criteria or why it believes Petitioner now meets it" and where Vietnam had refused to accept the petitioner for more than 20 years). ICE Officer Escareno states that petitioner was detained because "circumstances had changed such that it was now practicable to pursue Petitioner's deportation from the United States." Docket No. 14-1 at 2-3, ¶ 11. Yet, ICE Officer Escareno does not explain what "circumstances" have changed such that petitioner's deportation as a Mariel Cuban is now possible after more than 30 years. *See Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1124 (10th Cir. 2005) ("There is no contention that conditions in Cuba have changed so that [the petitioner's] removal to Cuba is reasonably foreseeable. Until the United States' relationship with Cuba changes so that removal becomes feasible, or Congress amends 8 U.S.C. § 1231(a)(6) to distinguish between resident aliens and inadmissible aliens, *Clark* dictates that [the petitioner] be released and paroled into the United States."). Respondents fail to rebut petitioner's showing as to the likelihood of his removal.

Accordingly, the Court finds that respondents have detained petitioner in violation of the Fifth Amendment and the INA. The Court will order that petitioner be released from custody pursuant to 28 U.S.C. § 2241(c)(3).[5]

---

[5] Because the Court will grant petitioner's petition on the basis of his *Zadvydas* claims, Counts Two and Three, it need not reach petitioner's remaining claims that contest petitioner's detention. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be

### 2. Additional Relief

Besides release from detention, petitioner seeks the following relief:

1. Assume jurisdiction over this matter;
2. Issue an emergency order staying Mr. Pena's transfer outside the District of Colorado and his removal from the United States;
3. Declare that Mr. Pena's immigration detention violates the regulations . . .;
4. Declare that Mr. Pena's detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.
5. Declare that Mr. Pena's detention violates the Immigration and Nationality Act;
6. Preclude Respondents from removing Mr. Pena to a third country without following proper procedures;
7. Grant attorneys' fees and costs of this suit under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412(2), *et seq*.

Docket No. 1 at 16-17.[6]  Petitioner's sixth form of relief, seeking to "[p]reclude Respondents from removing Mr. Pena to a third country without following proper procedures," is not available as a form of relief under 28 U.S.C. § 2241.  A "petition for writ of habeas corpus is only available to challenge the fact or duration of confinement." *Basri v. Barr*, 469 F. Supp. 3d 1063, 1066 (D. Colo. 2020).  Therefore, petitioner's request that respondents follow "proper procedures" before removing petitioner to a third country is outside the relief available on a petition for writ of habeas corpus.  "The habeas statute, 28 U.S.C. § 2241, grants federal courts the power to enforce the right of personal liberty by granting release or order of bond hearing, but does not create other

---

cumulative"); *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim); *Rios v. Noem*, 2025 WL 3141207, at *3 (S.D. Cal. Nov. 10, 2025) ("The Court need not reach Petitioner's claims arising under the [Administrative Procedure Act], because it grants his petition on due process grounds.").

[6] After filing his petition, petitioner filed a separate motion for an order to show cause and preliminary injunction.  *See* Docket No. 8.  In petitioner's motion, he requested preliminary relief prohibiting his transfer outside the District of Colorado while his petition is pending, *see id*. at 1, which is moot given that the Court will grant the petition.

11

injunctive powers in the federal courts." *Rios*, 2025 WL 3141207, at *4 (granting petitioner's petition for writ of habeas corpus and ordering that petitioner be released from immigration custody, but declining to enter "three forms of injunctive relief requiring Respondents to comply with the law") (citing *Fay v. Noia*, 372 U.S. 391, 430-31 (1963)).

As for petitioner's requests for declaratory relief – seeking a declaration that his detention violated "regulations," the Fifth Amendment, and the INA – these requests are moot because the Court will order respondents to release petitioner. A "declaratory relief claim is moot if the relief would not affect the behavior of the defendant toward the plaintiff." *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (citation omitted). However, such claims are not moot if "(1) secondary or collateral injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (internal quotation and citations omitted). A declaration that petitioner's detention was unlawful would not affect respondents' behavior toward petitioner now that he has been ordered released, and the Court does not find, and petitioner does not argue, that any of the mootness exceptions apply. *See Vaupel v. Ortiz*, 244 F. App'x 892, 896 (10th Cir. 2007) (holding that petitioner's declaratory claims for relief were moot after petitioner's release and deportation, declining "to issue an advisory opinion regarding the legality of [petitioner's] detention, because a declaratory judgment on that question would have no meaningful effect on the Department of Homeland Security's future conduct towards him") (internal quotation, alteration, and citation omitted); *A.N.M.L. v. Garland*, 2021 WL 1853577, at *2 (S.D. Cal.

12

May 10, 2021) (finding that petitioner's request for a declaration that her detention violated the law was moot upon petitioner's release from DHS custody).

As for petitioner's request for attorney's fees, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado. A motion for attorney fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

### III. CONCLUSION

Therefore, it is

**ORDERED** that petitioner Fidel A. Pena-Gil's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1] is **GRANTED**. It is further

**ORDERED** that petitioner Fidel A. Pena-Gil's motion for preliminary injunction [Docket No. 8] is **DENIED as moot**. It is further

**ORDERED** that respondents shall release petitioner Fidel A. Pena-Gil from custody within 48 hours.

DATED November 24, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge